# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BRILLIANT DPI, INC.,**

**Plaintiff,**

**v.**                                                    **Case No. 18-CV-799**

**KONICA MINOLTA BUSINESS SOLUTIONS USA, INC., et al.,**

**Defendants.**

# DECISION AND ORDER

### 1. Facts and Background

Brilliant DPI, Inc., formerly known as Amerisign & Graphics, Inc., is a Milwaukee printing company. (ECF No. 110, ¶¶ 1-2, 8-9.) Konica Minolta Business Solutions, U.S.A, Inc.[1] is in the business of selling and distributing business equipment and solutions. (ECF No. 110, ¶ 6.) In 2015 Brilliant began to discuss the prospect of

---

[1] Brilliant also named Konica Minolta Premier Finance as a defendant in its amended complaint. (ECF No. 63 at 1.) Brilliant states that Konica Minolta Premier Finance is a subset of Konica Minolta Business Solutions U.S.A., Inc., "and therefore will sometimes herein be referred to jointly as 'Konica.'" (ECF No. 63, ¶ 12.) The defendants describe it as "an assumed business name of Konica Minolta Business Solutions, U.S.A., Inc." (ECF No. 107 at 1.) Thus, it is unclear if Brilliant's claims are truly against both Konica Minolta Business Solutions U.S.A., Inc. and Konica Minolta Premier Finance. Konica Minolta Premier Finance and Konica Minolta Business Solutions U.S.A., Inc. are jointly defending this action and jointly moved for summary judgment. The parties in their present briefs address the separate entities collectively. (*See, e.g.*, ECF No. 107 at 1.) Because the distinction does not matter for present purposes, the court will likewise address the related entities collectively as "Konica."

leasing a new printer from Konica, with whom it had a longstanding relationship and from whom Brilliant was already leasing a Konica Minolta bizhub PRESS C8000 printer (ECF No. 110, ¶¶ 7-15). Konica arranged for a demonstration by representatives of Electronics for Imaging, Inc. ("EFI") of a printer manufactured by EFI, an H1625 LED Wide Format Printer. (ECF No. 110, ¶¶ 24-25.)

Konica and Brilliant entered into an equipment lease for the EFI printer on June 19, 2015 (ECF No. 110, ¶ 32). The lease for the new printer rolled in the prior lease for the other printer that Brilliant was already leasing from Konica. (ECF No. 110, ¶¶ 33-34.)

Almost immediately Brilliant reported problems with the EFI printer to Konica. (ECF No. 110, ¶ 38.) After about a year, Konica and Brilliant agreed to rescind the lease, and Konica replaced the EFI printer with a new EFI printer. (ECF No. 110, ¶ 39.) Konica and Brilliant entered into a new lease, effective as of October 27, 2016. (ECF No. 110, ¶¶ 39-41.) Brilliant reported problems with the second printer, too. (ECF No. 110, ¶ 42.) Konica assigned the lease to defendant CIT Technology Financing Services, Inc. (ECF No. 77 at 15.)

Brilliant brought this lawsuit, asserting claims against Konica for deceptive trade practices in violation of Wis. Stat. § 100.18 (ECF No. 63, ¶¶ 41-49); negligent misrepresentation (ECF No. 63, ¶¶ 50-56); intentional misrepresentation or fraudulent inducement (ECF No. 63, ¶¶ 57-64); intentional interference with business relations

(ECF No. 63, ¶¶ 65-71); and breach of contract (ECF No. 63, ¶¶ 72-78). It also seeks declaratory relief against CIT. (ECF No. 63, ¶¶ 102-05.) It asks the court to declare "that Plaintiff is not liable to CIT for any amounts allegedly owed through the lease agreement because of Konica's breach." (ECF No. 63, ¶ 105.) Brilliant also asserted claims against EFI, but it was dismissed as a party on March 5, 2021, pursuant to a stipulation of the parties. (ECF No. 105.)

CIT alleged counterclaims against Brilliant for breach of contract (ECF No. 67 at 29-30, ¶¶ 18-29), replevin (ECF No. 67 at 30-31, ¶¶ 30-34), quantum meruit (ECF No. 67 at 31-32, ¶¶ 35-44), and unjust enrichment (ECF No. 67 at 32, ¶¶ 45-51).

CIT moved for summary judgment as to Brilliant's declaratory judgment claim and its counterclaims. (ECF No. 71.) Brilliant filed a brief in opposition (ECF No. 76), responded to CIT's proposed findings of fact (ECF No. 77 at 1-7), and submitted its own additional proposed facts (ECF No. 77 at 7-12). CIT replied in support of its motion (ECF No. 103) and responded to Brilliant's additional proposed facts (ECF No. 104).

Konica has likewise moved for summary judgment on Brilliant's claims. (ECF No. 107.) Although Brilliant responded to Konica's motion (ECF No. 113), it did not respond to Konica's proposed findings of fact, *see* Civ. L.R. 56(b)(2)(B). Therefore, all of Konica's proposed findings of fact are deemed admitted. *See* Civ. L.R. 56(b)(4) (E.D. Wis.).

Nor did Brilliant submit any additional proposed findings of fact. *See* Civ. L.R. 56(b)(2)(B)(ii). Nonetheless, additional factual assertions were included in Brilliant's brief. (ECF No. 113 at 1-13.) In addition to not being presented in accordance with Civil Local Rule 56(b)(2)(B)(ii), these "facts" were often improperly supported by citations only to the allegations in the complaint or to a declaration of Brilliant's attorney.[2] But Brilliant's attorney has not shown that he possesses personal knowledge of the facts recounted in his declaration, *see* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge ...."). For these reasons, the court disregards the additional factual assertions Brilliant proffers in its brief in opposition to Konica's motion.

Konica's briefs likewise rely on certain factual assertions that it did not present in its proposed findings of fact. (*See, e.g.*, ECF No. 108 at 7.) The court also disregards these improperly presented factual assertions.

The motions are ready for resolution. The court has jurisdiction under 28 U.S.C. § 1332 because complete diversity exists among the parties and the amount in controversy exceeds $75,000. (ECF No. 63, ¶¶ 1-5, 7.) All parties have consented to the full jurisdiction of this court in accordance with 28 U.S.C. § 636(c). (ECF Nos. 3, 21, 22, 30.)

---

[2] Although signed by Attorney George S. Peek, the declaration bears the bar number of Attorney Andrew Rider.

## 2. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

## 3. Konica's Motion for Summary Judgment

### 3.1. Wisconsin Statute § 100.18

Count I of Brilliant's complaint alleges a claim under Wis. Stat. § 100.18, Wisconsin's Deceptive Trade Practices Act. Konica contends that it is entitled to summary judgment on this claim because Brilliant fails to meet the elements of a claim under Wis. Stat. § 100.18 and has no evidence to support such a claim. (ECF No. 108 at 6.)

"At issue is the first provision in Wis. Stat. § 100.18. It consists of one sentence only, but its length would put even Dickens to shame." *Uniek, Inc. v. Dollar Gen. Corp.*, 474 F. Supp. 2d 1034, 1036 (W.D. Wis. 2007).

> (1) No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading

Wis. Stat. § 100.18(1). "Although the wording is cumbersome, the gist of the provision is simple, at least for the purpose of this case: it prohibits the making of false or misleading representations to 'the public' in the context of certain business transactions." *Uniek,* 474 F. Supp. 2d at 1036.

To prevail on a claim under Wis. Stat. § 100.18 Brilliant needs to prove three elements. "First, that with the intent to induce an obligation, the defendant made a

representation to 'the public.' Wis. Stat. § 100.18(1). Second, that the representation was untrue, deceptive or misleading. *Id*. Third, that the representation caused the plaintiff a pecuniary loss. Wis. Stat. § 100.18(11)(b)2." *K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶19, 301 Wis. 2d 109, 121-22, 732 N.W.2d 792, 798.

"The use of the term 'the public' does not mean that the statements be made to a large audience. …[I]n some situations one person can constitute the public." *State v. Automatic Merchandisers of Am., Inc.*, 64 Wis. 2d 659, 664, 221 N.W.2d 683, 686 (1974); *Chris Hinrichs & Autovation Ltd. v. Dow Chem. Co.*, 2020 WI 2, ¶6, 389 Wis. 2d 669, 681, 937 N.W.2d 37, 43. A plaintiff is generally a member of "the public" unless a "particular relationship" exists between it and the defendant. *K&S Tool & Die*, 2007 WI 70, ¶27. A "particular relationship" may include a contractual relationship. *Hackel v. Nat'l Feeds, Inc.*, 986 F. Supp. 2d 963, 980 (W.D. Wis. 2013) (citing *Automatic Merchandisers of Am.*, 64 Wis. 2d at 663, 221 N.W.2d at 686; *Kailin v. Armstrong*, 2002 WI App 70, ¶44, 252 Wis. 2d 676, 643 N.W.2d 132).

"The existence of a particular relationship 'will depend upon its own peculiar facts and circumstances and must be tested by the statute in the light of such facts and circumstances.'" *K&S Tool & Die*, 2007 WI 70, ¶27 (quoting *Cawker v. Meyer*, 147 Wis. 320, 326, 133 N.W. 157, 159 (1911)). Thus, whether a plaintiff was a member of "the public" is often a question for the finder of fact. *See Hackel*, 986 F. Supp. 2d at 980 (holding that, notwithstanding a "long-standing commercial relationship," because plaintiff was not

under any obligation to continue purchasing from the defendant, a dispute of material fact existed as to whether there existed a "particular relationship"); *United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc.*, 2012 WI App 88, 343 Wis. 2d 679, 819 N.W.2d 563, 2012 Wisc. App. LEXIS 481, *9 (unpublished) *aff'd and rev'd, in part, on other grounds*, 2013 WI 72, 349 Wis. 2d 587, 836 N.W.2d 807.

However, in some instances the court at summary judgment can find the existence of a "particular relationship." *See, e.g.*, *Uniek*, 474 F. Supp. 2d at 1039-40; *Mayville Die & Tool, Inc. v. Weller Mach. Co.*, 2002 WI App 1, 249 Wis. 2d 490, 639 N.W.2d 224, 2001 Wisc. App. LEXIS 1224, *4 (unpublished). For example, in *Uniek, Inc. v. Dollar General Corp.*, 474 F. Supp. 2d 1034 (W.D. Wis. 2007), the court held that the plaintiff was not a member of "the public" because the parties had signed a "letter of understanding" stating that plaintiff would be the defendant's "core supplier" of picture frames. *Id.* at 1034, 1039-40. The lawsuit involved the same relationship covered by the letter of understanding. *Id.* at 1039.

Konica insists that Brilliant was not a member of the public because, at the time of any allegedly false, deceptive, or misleading statement, a contractual relationship already existed between the parties. (ECF No. 108 at 6-7.) Specifically, Brilliant was already leasing the Konica Minolta bizhub PRESS C8000 printer before it even began discussing leasing the new EFI H1625 LED Wide Format Printer. Alternatively, at a minimum Brilliant was not a member of "the public" when Konica made any alleged

misrepresentation after Brilliant entered into the lease for the first EFI printer (but before Konica and EFI agreed to replace the printer and Brilliant agreed to a new lease).

Brilliant offers very little of substance in response to this part of Konica's motion. (ECF No. 113 at 16-19.) It asserts that, under *Kailin v. Armstrong*, 2002 WI App 70, ¶44, 252 Wis.2d 676, 643 N.W.2d 132, the fact that a separate contract existed between Brilliant and Konica does not mean that Brilliant was not a member of "the public." (ECF No. 113 at 19.) Brilliant argues that only if the misrepresentations related to that existing contract—that is, the contract for the Konica Minolta bizhub printer—would it not be a member of "the public." (ECF No. 113 at 19.)

Even if the court accepted Brilliant's argument, it does not address Konica's alternative argument with respect to any alleged misrepresentation made after Brilliant entered into the lease for the first EFI printer. Given Brilliant's lack of a response to this argument, it is easy to conclude that, after it entered into the lease for the first EFI printer, Brilliant was not a member of "the public" under Wis. Stat. § 100.18. *Kailin*, in fact, expressly supports Konica's position on this issue: "a statement made to the particular party with whom one has contracted is not a statement made to 'the public.'" *Kailin*, 2002 WI App 70, ¶44 ("Once the contract was made, the Kailins were no longer 'the public' under the statute because they had a particular relationship with Armstrong-that of a contracting party to buy the real estate that is the subject of his post-contractual representation.") "Statements made by the seller after a person has

made a purchase or entered into a contract to purchase logically do not cause the person to make the purchase or enter into the contract." *Id*. Therefore, any alleged misrepresentation that occurred following the lease for the first EFI printer cannot serve as a basis for a claim under Wis. Stat. § 100.18.

That leaves for resolution the question of any alleged misrepresentation occurring before Brilliant agreed to the first lease for an EFI printer. If Brilliant "had several long-standing contracts" with Konica and was exclusively reliant on Konica for its printer needs (as Konica asserts in its brief (ECF No. 108 at 6-7)), these facts would tend to strongly support the conclusion that Brilliant was not a member of "the public." But Konica failed to include these "facts" in its proposed findings of fact, and thus they are not properly before the court. The court disregards these factual assertions for purposes of this motion.

Having said that, Brilliant does not dispute that it had a longstanding relationship with Konica. (ECF No. 110, ¶ 7.) However, in *Hackel v. National Feeds, Inc.*, 986 F. Supp. 2d 963, 980 (W.D. Wis. 2013), the court concluded that, notwithstanding the long-term relationship between the plaintiff and the defendant, the plaintiff remained a member of "the public" because no contractual relationship existed and the plaintiff was not obligated to continue to keep doing business with the defendant. Here, absent evidence that Brilliant was required to keep doing business with Konica (and none was presented), Brilliant could have looked to another vendor for a new printer.

But the fact of a current contractual relationship between Brilliant and Konica in the form of the Konica Minolta bizhub printer lease, combined with their longstanding business relationship, sufficiently distinguishes this case from *Hackel*. Thus, given its longstanding business relationship with Konica and its current, albeit unrelated, contract regarding a separate printer, Brilliant was not a member of "the public" at the time Konica made any alleged misrepresentations regarding the EFI printers.

The present facts are more in line with *Mayville Die & Tool, Inc. v. Weller Mach. Co.*, 2002 WI App 1, 249 Wis. 2d 490, 639 N.W.2d 224, 2001 Wisc. App. LEXIS 1224 (unpublished), where the court held that the "ongoing business relationship" and contractual relationship (albeit one not related to the subject of the dispute; defendant was one of plaintiff's distributors) between the plaintiff and the defendant meant that the plaintiff was not a member of "the public" under Wis. Stat. § 100.18.

Therefore, the court will grant Konica's motion for summary judgment as to Brilliant's claims under Wis. Stat. § 100.18 (ECF No. 63, ¶¶ 41-49 (Cause of Action No. 1)).

### 3.2. The Economic Loss Doctrine

Konica contends that Brilliant's tort claims (for negligent misrepresentation, intentional misrepresentation/fraudulent inducement, and intentional interference with business relations) are barred by the economic loss doctrine.

The economic loss doctrine is a judicially created doctrine with three primary purposes. First, the doctrine exists to "maintain the fundamental

distinction between tort law and contract law ….” Second, it protects "commercial parties’ freedom to allocate economic risk by contract ….” Third, the doctrine encourages "the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk.”

*Chris Hinrichs & Autovation*, 2020 WI 2, ¶29 (internal citations omitted) (quoting *Van Lare v. Vogt, Inc.*, 2004 WI 110, ¶17, 274 Wis. 2d 631, 640, 683 N.W.2d 46, 51). Thus, "a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories.” *Id.* ¶30 (ellipses omitted) (quoting *Van Lare*, 2004 WI 110, ¶18). "'Economic loss' in the context of the doctrine is defined as 'the loss in a product’s value which occurs because the product is 'inferior in quality and does not work for the general purposes for which it was manufactured and sold.'" *Id.* (quoting *Ins. Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI 139, ¶23, 276 Wis. 2d 361, 371, 688 N.W.2d 462, 467).

Under the "other property" exception to the economic loss doctrine, if a product causes harm to something other than itself, the economic loss doctrine will not bar a tort claim. *See Grams v. Milk Prods., Inc.*, 2005 WI 112, ¶24, 283 Wis. 2d 511, 525, 699 N.W.2d 167, 173. But some products are intended to affect other property. For example, a grain silo is expected to protect silage. *See id.* ¶33 (discussing *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 317, 475 N.W.2d 587, 590 (Ct. App. 1991)). If the silo system fails, "other property" in the form of the silage may be damaged, but the "other

property" exception to the economic loss doctrine would not apply because the failure is really in the failure of the silo system to function as expected.

Claims of fraud in the inducement are not barred by the economic loss doctrine, provided "the fraud is extraneous to, rather than interwoven with, the contract." *Kaloti Enters. v. Kellogg Sales Co.*, 2005 WI 111, ¶42, 283 Wis. 2d 555, 585, 699 N.W.2d 205, 219 (quoting *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶47, 262 Wis. 2d 32, 52, 662 N.W.2d 652, 662; *Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, 209 Mich. App. 365, 373, 532 N.W.2d 541, 545 (1995)). Alleged misrepresentations as to the "quality or the characteristics of the goods for which the parties contracted" do not come under this exception. *Id*.

In its initial brief Konica devotes much time arguing that any alleged shortcomings in the printer did not result in damage to "other property" and this is really a case of "disappointed expectations." (ECF No. 108 at 11-15.) In Konica's view, insofar as any alleged shortcomings in the printer resulted in damage to "other property" in the form of damage to the print jobs Brilliant expected the printer to produce, any such damage was simply a consequence of the printer's failure to function as expected.

Konica also argues that the fraud in the inducement exception does not apply. (ECF No. 108 at 15-16.) It argues that it did not make any misrepresentations, much less intentional ones. (ECF No. 108 at 15.) Moreover, fraud could not have induced Brilliant

to enter the second lease for the EFI printer because it had already agreed to the first lease for the EFI printer. (ECF No. 108 at 15-16.)

Brilliant's response is unclear, but it does not address Konica's arguments. (ECF No. 113 at 20-27.) Aside from outlining the general law and describing its claim, Brilliant appears to argue that the economic loss doctrine does not apply because Konica owed independent duties to it. (ECF No. 113 at 23-27.) Specifically, it argues that Konica owed Brilliant the duties reflected in Wis. Stat. § 100.18(1) and "a standard of ordinary care in all activities." (ECF No. 113 at 24-27.)

Any argument based on Wis. Stat. § 100.18 is inapplicable because, as discussed above, Brilliant was not part of "the public" and so the statute does not apply. Brilliant's other argument—which the court understands to be that the economic loss doctrine does not apply because Konica owed Brilliant a general duty of ordinary care—is meritless. Such a theory would seem to negate the economic loss doctrine entirely because the alleged existence of such a duty underlies every tort action.

Brilliant discusses *Shister v. Patel*, 2009 WI App 163, 322 Wis. 2d 222, 776 N.W.2d 632, implying that it supports its position. But that case is irrelevant. *Shister* involved a real estate broker's duty to a buyer. The court held that the economic loss doctrine did not apply to claims of negligence in the provision of services rather than goods. *Id.* ¶13. Moreover, the court noted that the broker's contract was with the seller, not the plaintiff

buyer, and thus the plaintiff did not have contractual remedies against the broker. *Id.*, ¶¶14-15.

Here, a contract existed between Brilliant and Konica, and that contract was for the provision of a good (the printer) rather than for services. *Cf. id*. The alleged misrepresentations were related to the quality and characteristics of the printer and not extraneous to the contract. *See Kaloti Enters.*, 2005 WI 111, ¶¶42-43. Therefore, the fraud in the inducement exception to the economic loss doctrine does not apply.

Brilliant does not argue that the "other property" exception applies. Therefore, the court accepts Konica's unrebutted argument that the print jobs that the printer allegedly failed to complete were not "other property" but were losses that resulted from Brilliant's "disappointed expectations" in the performance of the printer.

Brilliant having not shown that an exception to the doctrine may apply, the economic loss doctrine bars Brilliant's tort claims for negligent misrepresentation (ECF No. 63, ¶¶50-56 (Cause of Action No. 2)) and intentional misrepresentation (ECF No. 63, ¶¶57-64 (Cause of Action No. 3)). Brilliant likewise offers no response to Konica's argument that the economic loss doctrine bars the intentional interference with business relations claim. Therefore, the court accepts as undisputed that the economic loss doctrine also bars this claim (*see* ECF No. 63, ¶¶ 65-71 (Cause of Action No. 4)). The court will grant Konica's motion as to these claims.

### 3.3. Breach of Contract

In the fifth claim of its amended complaint Brilliant alleges that "Konica failed to perform their obligations under the Lease agreement in numerous ways, including but not limited to: … Failing to maintain the EFI H1625 printer in good operating condition; and … Failing to provide equipment that could be used by Plaintiff for the Plaintiff's stated purpose, which was known to [Konica]." (ECF No. 63, ¶ 77.) In seeking summary judgment on this claim, Konica contends that Brilliant's breach of contract claim is really just a re-working of its misrepresentation claims. (ECF No. 108 at 18.) It argues that "any statements made by Konica Minolta prior to the First Lease are waived by Brilliant's acceptance of the second EFI Printer and the Second Lease which superseded the First Lease." (ECF No. 108 at 18.) In Konica's view, it contracted to provide Brilliant an EFI H1625 Printer, and it is undisputed that it provided it. (ECF No. 18 at 18-19.)

In responding to Konica's motion, Brilliant asserts that "CSB committed breaches of the equipment lease contracts by failing to deliver to Brilliant a printer that could print on high-value, specialty rigid and inflexible substrates in order to produce marketable materials." (ECF No. 113 at 27-28.) Brilliant does not say who "CSB" is, and there is no indication that it is another name for Konica. To the extent it is a typo, Brilliant has not shown that Konica entered into a contract to "to deliver to Brilliant a printer that could print on high-value, specialty rigid and inflexible substrates in order to produce marketable materials." The lease establishes only that Konica was to deliver

to Brilliant a particular model of printer, which it undisputedly did. (ECF No. 110, ¶ 32.)

Moreover, the lease contained a broad disclaimer that states:

> WARRANTY DISCLAIMER: WE MAKE NO WARRANTY EXPRESS OR
> IMPLIED, INCLUDING THAT THE EQUIPMENT IS FIT FOR A
> PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS
> MERCHANTABLE. YOU AGREE THAT YOU HAVE SELECTED EACH
> ITEM OF EQUIPMENT BASED UPON YOUR OWN JUDGMENT AND
> DISCLAIM ANY RELIANCE UPON ANY STATEMENTS OR
> REPRESENTATIONS MADE BY US. WE ARE LEASING THE
> EQUIPMENT TO YOU "AS-IS". You acknowledge that none of Supplier or
> their representatives are our agents and none of them are authorized to
> modify the terms of this Agreement. No representation or warranty of
> Supplier with respect to the Equipment will bind us, nor will any breach
> thereof relieve you of any of your obligations hereunder. … You agree that
> the Customer One Guarantee is a separate inducement obligation of the
> Supper [sic] to you, that no assignee of the Lessor shall have any
> obligation to you with respect to the Guarantee and that your obligations
> under this Agreement are not subject to setoff, withholding, reduction,
> counterclaim or defense for any reason whatsoever including, without
> limitation, any claim you may have against Supplier with respect to the
> Customer One Guarantee.

(ECF No. 110, ¶ 44.)

> Brilliant also states:

> Brilliant has alleged that Konica failed to perform its obligations to
> Brilliant by: 1) failing to maintain the HFE H1625 printer in good
> operating conditions pursuant to a separate equipment maintenance
> agreement; and 2) failing to furnish Brilliant equipment under the leases
> that could be used by Brilliant to print on high-value, specialty rigid and
> inflexible substrates in order to produce marketable materials.

(ECF No. 113 at 27-28.) The second argument is merely a restatement of its argument

discussed above regarding "CSB" and fails for the reasons stated: Brilliant has not

presented evidence that the parties entered into any contract including these terms, and

any suggestion that there was such an agreement has been expressly disclaimed in the written lease.

As for Brilliant's contention that Konica breached a "separate equipment maintenance agreement," no such claim is in Brilliant's original or amended complaints (ECF Nos. 1 and 63.) Brilliant is clear in both complaints that the lease is the only contract that Konica is alleged to have breached. (ECF No. 63, ¶¶ 73-77.)

Even if the court were to consider whether Brilliant should be permitted to constructively amend its complaint to add a claim for breach of a separate contract, *i.e.*, an equipment maintenance agreement, summary judgment in favor of Konica would remain appropriate because Brilliant has not produced evidence to sustain such a claim. Setting aside Brilliant's failure to properly present any proposed findings of fact relating to a breach of an equipment maintenance agreement, it does not even *im*properly present the terms of any purported equipment maintenance agreement that Konica allegedly breached. It does not appear that Brilliant has even provided the court with any such agreement so that the court could review its terms.

Therefore, the court will grant Konica's motion for summary judgment as to Brilliant's breach of contract claim.

Consequently, Konica's motion will be granted in whole and Brilliant's claims against Konica dismissed with prejudice.

### 4. CIT's Motion for Summary Judgment

CIT contends that it is entitled to summary judgment on its counterclaim for breach of contract because it is undisputed that Brilliant is obligated to make monthly lease payments to CIT and has not. (ECF No. 72 at 7.) Alternatively, it contends it is entitled to summary judgment on the alternative claims it asserts against Brilliant for replevin, quantum meruit, and unjust enrichment. (ECF No. 72 at 8.) And CIT contends it is entitled to summary judgment on Brilliant's claim for declaratory relief, arguing that Brilliant's obligation to make monthly payments to CIT under the lease was absolute and unconditional. (ECF No. 72 at 10.)

Brilliant's primary argument in opposition to CIT's motion is that, because CIT's claims depend on the validity of the initial lease between Brilliant and Konica, CIT's claims cannot be resolved until the claims between Brilliant and Konica are resolved. (ECF No. 76 at 16-19, 23-24.) As discussed above, the court has rejected all of Brilliant's claims against Konica and concluded that Konica is entitled to summary judgment. Thus, the pendency of those claims is no longer a reason to delay resolving the claims involving CIT.

The court agrees with CIT that Brilliant's obligation under the lease was absolute and unconditional. (ECF No. 77, ¶¶ 6-7.) It was not permitted to withhold or offset its payments for any reason. (ECF No. 77, ¶ 7.) Given these undisputed facts and the lack of any substantive opposition from Brilliant, the court will grant CIT's motion for

summary judgment with respect to its counterclaims and Brilliant's declaratory judgment claim.

CIT asks the court to enter judgment in "the amount of $292,305.13, plus pre- and post-judgment interest, reasonable attorneys' fees and costs, an order requiring the return of the Leased Equipment to CIT, and for any such other and further relief the Court deems appropriate under the circumstances." (ECF No. 103 at 13.) Brilliant argues that CIT failed to mitigate its damages by, for example, not accepting Brilliant's offer to voluntarily surrender the printer. (ECF No. 76 at 20.)

CIT asserts that the current value of the printer is "approximately $50,935.76" (ECF No. 103 at 10) and its damages under its counterclaims is $292,305.13 (ECF No. 103 at 10, 13.) Its assertion as to the current value of the printer is unsupported and the basis for its damages claim is unclear. For example, it is unclear if the current value of the printer is included in its damages figure. The court also finds that disputes of material fact exist as to whether CIT acted to mitigate its damages. For example, the parties dispute whether CIT ever attempted to retrieve the printer following Brilliant's offer to surrender it. (ECF No. 104, ¶ 34.)

Accordingly, summary judgment is not appropriate for CIT as to the question of damages.

**IT IS THEREFORE ORDERED** that Konica Minolta Business Solutions USA Inc. and Konica Minolta Premier Finance's motion for summary judgment (ECF No. 107) is

granted. All of the claims against Konica Minolta Business Solutions USA Inc. and Konica Minolta Premier Finance in Brilliant DPI Inc.'s amended complaint are dismissed with prejudice and Konica Minolta Business Solutions USA Inc. and Konica Minolta Premier Finance are dismissed as a defendants in this action.

**IT IS FURTHER ORDERED** that CIT Technology Financing Services Inc.'s motion for summary judgment (ECF No. 71) is granted in part and denied in part. It is granted with respect to Brilliant DPI Inc.'s claim for declaratory judgment and CIT's counter-claims for breach of contract, replevin, quantum meruit, and unjust enrichment. However, disputes of material fact remain as to the amount of CIT's damages.

**IT IS FURTHER ORDERED** that the Clerk shall set a telephonic conference to discuss further scheduling.

Dated at Milwaukee, Wisconsin this 23rd day of June, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge